UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

AROR ARK O'DIAH,

        Petitioner,

       -against-

MICHAEL CORCORAN, DAVID UNGER,
SUPERINTENDENT BRIAN FISCHER,
ANDREW CUOMO, STATE OF NEW YORK,

        Respondents.
-----------------------------------------------------------------X

**OPINION AND ORDER**
09-CV-3580 (SJF)

FEUERSTEIN, J.

     Petitioner Aror Ark O'Diah ("petitioner"), proceeding pro se, has filed the instant

petitions seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Docket Entry No. 1].

Petitioner is incarcerated pursuant to two (2) separate judgments of conviction. On July 7, 2005,

following a bench trial, a judgment of conviction (the "first conviction") was entered against

petitioner in the Supreme Court of the State of New York, Queens County, finding him guilty of

(1) assault in the second degree, N.Y. PENAL LAW § 120.05(3), and (2) resisting arrest, N.Y.

PENAL LAW § 205.30. Petitioner was sentenced to (1) thirty (30) days in jail followed by five (5)

years of probation on the assault conviction, and (2) thirty (30) days in jail followed by three (3)

years of probation on the resisting arrest conviction.

     On January 26, 2007, a separate judgment of conviction (the "second conviction") was

entered against petitioner upon a jury verdict finding him guilty of: (1) assault in the second

degree, N.Y. PENAL LAW § 120.05(3); (2) resisting arrest, N.Y. PENAL LAW § 205.30;

(3) aggravated unlicensed motor vehicle operation in the third degree, N.Y. VEH. & TRAF. LAW

1

("VTL") § 511(1)(a); (4) unlawful operation of a vehicle on a public highway, VTL § 509(1); and (5) stopping, standing, or parking outside of a business or residential district, VTL § 1201. Petitioner was sentenced as a second violent felony offender to: (1) a determinate term of incarceration of five (5) years and five (5) years' post-release supervision on the assault conviction; (2) a determinate term of incarceration of one (1) year on the resisting arrest conviction; (3) a determinate term of incarceration of thirty (30) days on the aggravated unlicensed motor vehicle operation conviction; and (4) a determinate term of incarceration of fifteen (15) days on the remaining VTL convictions. The trial court also found that petitioner violated the terms of his probation imposed following his first conviction and resentenced him to: (1) a determinate term of incarceration of two (2) years and three (3) years' post-release supervision on the assault conviction; and (2) one (1) year of incarceration on the resisting arrest conviction, to run concurrently with the sentences under the second conviction.

I.      Background

      A.      First Conviction

           1.      Trial

On November 6, 2002, Port Authority Police Department ("PAPD") Officers George Juez and Jorge Espinoza were assigned to the Taxi Enforcement Squad at LaGuardia Airport in Queens County. T. 15-16. Officer Juez and Officer Espinoza were dressed in plain clothes and were patrolling the arrivals area. T. 16. Perry Magee testified he arrived on a flight and was walking through the arrivals area when petitioner approached him and asked if he needed a ride, which he said would cost less than a taxi. T. 121-22. Magee agreed, and followed petitioner out of the terminal. T. 125-26. Officer Juez saw petitioner approach Magee, overheard their conversation, and saw Magee accompany petitioner out of the terminal. T. 17-18, 47.

2

Officer Juez and Officer Espinoza followed petitioner and Magee out of the terminal, and Officer Juez overheard petitioner say that he would take Magee to a hotel in Manhattan. T. 19-20. Petitioner then loaded Magee's luggage into a silver Lincoln bearing civilian license plates (as opposed to taxi or limousine plates). T. 20-21, 73. The officers approached petitioner and Magee and identified themselves. T. 20, 75, 169. Officer Juez asked Magee how much petitioner was charging him to take him to a Manhattan hotel, and Magee said between thirty (30) and forty (40) dollars. T. 20, 72. Magee told Officer Juez that he had not arranged for petitioner to pick him up at the airport and that petitioner "picked [him] up in the terminal." T. 73, 125.

Officer Juez told petitioner that "this is probably going to be a summons" and asked to see petitioner's driver's license and vehicle registration. T. 21. Petitioner did not respond to Officer Juez and ran toward the front of his vehicle. T. 21, 128-29, 171. Petitioner then attempted to jump over a guardrail but was stopped by Officer Juez. T. 22-23, 128-29, 173. Officer Juez told petitioner that he was under arrest, and petitioner said "you're not fucking locking me up." T. 22-23, 173. As petitioner struggled with Officer Juez, Officer Espinoza was able to place a handcuff on petitioner's right arm. T. 23-24, 83, 174. Officer Juez called for assistance on his radio, and the radio was knocked to the ground. T. 85. While Officer Juez attempted to place a handcuff on petitioner's left arm, petitioner flailed his arms and knocked the handcuffs to the ground. T. 25, 85-88, 90-91. Petitioner then grabbed Officer Juez's arm and twisted it as he again attempted to jump over the guardrail. T. 25, 90-95. A third officer responded to assist, and the officers were able to place the other handcuff on petitioner. T. 26. Approximately three (3) other officers also responded to the scene. T. 29, 197-98.

3

Officer Suez missed four (4) weeks of work due to injuries to his arm incurred during the struggle with petitioner and received treatment from an orthopedic surgeon and a "rehabilitation doctor." T. 27-29. Officer Juez's medical records were introduced into evidence. T. 27-28.

Petitioner did not testify at trial and did not call any witnesses. T. 225.

### 2. Post-Conviction Procedural History

Petitioner filed a pro se motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10 ("section 440.10") seeking to vacate the first conviction on the grounds that: (1) there was prosecutorial and judicial misconduct at the trial; (2) the trial court excluded evidence favorable to petitioner; and (3) petitioner was denied effective assistance of counsel because his counsel (a) failed to move for a mistrial on the basis of the prosecution's improper questioning of a witness and (b) failed to investigate petitioner's allegation that there were six (6) white male Port Authority Police Officers at the scene of petitioner's arrest. By order dated November 29, 2005, the trial court directed the prosecution to file a supplemental response addressing petitioner's ineffective assistance of counsel claim and denied petitioner's remaining claims. Declaration in Opposition to the Petition for a Writ of Habeas Corpus [Docket Entry No. 40] ("Resp. Aff.") Ex. C. On January 27, 2006, the trial court held a hearing to consider petitioner's ineffective assistance of counsel claim.

Following the hearing, by order dated February 15, 2006, the trial court denied petitioner's section 440.10 motion "with leave to renew upon showing that had defense counsel subpoenaed PAPD records they would have supported [petitioner's] claim that the officers who testified [at trial] were not present at the time of his confrontation with the PAPD police." Resp. Aff. Ex. E. Petitioner's motion for reconsideration of the denial of his section 440.10 motion, Resp. Aff. Ex. F, was denied on June 5, 2007 on the ground that petitioner failed to demonstrate

4

that a subpoena of PAPD records would have supported petitioner's claim that the officers who testified at his trial were not present during his arrest. Resp. Aff. Ex. H. Although petitioner produced the names of five (5) white police officers that allegedly beat and arrested him, "he [did] not assert that these officers would testify that Officer Jorge Espinoza and George Juez (who did testify regarding his arrest at trial) gave false testimony at his trial regarding his arrest." Id. Petitioner filed another motion for reconsideration of the denial of his section 440.10 motion, which was denied on September 5, 2007. Resp. Aff. Ex. K.

Petitioner appealed from his first conviction to the Appellate Division of the New York State Supreme Court, Second Department (the "Appellate Division"), arguing that the waiver of his constitutional right to a jury trial was invalid because the trial court did not establish that the waiver was knowing, intelligent and voluntary. Resp. Aff. Ex. L. The Appellate Division affirmed petitioner's first conviction, holding that petitioner's argument was not preserved for appellate review and that "the record d[id] not support [petitioner's] contention that the waiver was invalid, as he executed a written waiver in open court, which was approved by the trial justice, and the circumstances surrounding the waiver supported the conclusion that it was made knowingly, voluntarily, and intelligently." Resp. Aff. Ex. N. The New York Court of Appeals denied leave to appeal on March 1, 2010. Resp. Aff. Ex. O2.

B.    Second Conviction

1.    Trial

Police Officer Thomas Eddings was assigned to John F. Kennedy International Airport on June 22, 2006. T2. 189-92. Officer Eddings was patrolling in a marked police vehicle and saw that traffic near Terminal 3 was obstructed by a green van bearing civilian license plates parked diagonally across two (2) lanes of traffic and a pedestrian walkway. T2. 193-96. Officer

Eddings activated the emergency lights on his vehicle and pulled in front of the van to determine whether there was a driver inside. T2. 196. Officer Eddings exited his vehicle and approached the driver of the van, later identified as petitioner, and notified him that he was obstructing traffic and a pedestrian walkway. T2. 197-98. Officer Eddings took petitioner's license and vehicle registration, directed him to pull the van to the side of the road to allow traffic to proceed around him, and parked the police vehicle behind the van. T2. 198.

Petitioner's license indicated that it was "restricted," allowing petitioner to drive to or from his employment and certain other locations. T2. 199, 230, 243, 295. Officer Eddings asked petitioner whether he was aware of the restrictions on his license and whether he worked at the airport. T2. 199, 230. Petitioner said that he did not work at the airport and that his license was no longer restricted. T2. 199, 230. Officer Eddings checked petitioner's license in the mobile Department of Motor Vehicles records data terminal in his vehicle, which indicated that petitioner's license was suspended. T2. 200, 309.

Officer Eddings returned to the van and told petitioner that his license was suspended and directed petitioner to step out of the vehicle. T2. 202. Petitioner stepped out of the vehicle and became agitated, yelling that "there was no way . . . that his license could be suspended." T2. 202. Officer Eddings directed petitioner to place his hands behind his back, but petitioner resisted and "continued to raise his hands in the air and turn and say that it was impossible that his license was suspended and that he would not be arrested." T2. 203, 233-34. Officer Eddings eventually handcuffed petitioner, T2. 233-34, and petitioner told Officer Eddings that there were papers in the van showing that his license had been reinstated. T2. 205.

Officer Eddings looked at the letter that petitioner indicated and determined that it was a letter from the Department of Motor Vehicles notifying petitioner of the suspension of his

license. T2. 205, 301. The letter "reflect[ed] the last suspension on his license which stated if he did not respond by the date provided on the letter," which had passed nine (9) days before, "his license would in fact be suspended." T2. 205, 301. Officer Eddings told petitioner "that the letter that he was referring to is a date which is before this one, and it states that his license is in fact suspended, that his privilege to drive is not valid." T2. 209. Petitioner continued to yell that his license could not be suspended, and Officer Eddings told petitioner that he would have to come "to the station house and make sure that everything was correct." T2. 209.[1]

As Officer Eddings led petitioner toward the police vehicle, petitioner "started to pull away from [Officer Eddings] saying that he wasn't going to go back, and he started pulling towards his vehicle." T2. 209. Petitioner "kept twisting his body to try and shake the grip that [Officer Eddings] had on him and pushing with his legs on the ground to push his weight in the opposite direction." T2. 212. Officers Murphy and Papile responded to the scene, and Officer Murphy attempted to assist Officer Eddings in forcing petitioner into the back of the police vehicle. T2. 212-14. Officer Murphy stood in front of petitioner and tried to push him into the back seat, while Officer Papile tried to pull petitioner into the car from the opposite side of the vehicle. T2. 214-15. Officer Murphy "put [his] hands on [petitioner] to push him back into the vehicle while he was pushing up at [Officer Murphy] trying to get out of the vehicle." T2. 277. Officer Murphy "felt [his] right shoulder as if it slipped out of the socket and slipped back in on its own," causing "significant pain in [his] right shoulder" and "trouble moving [his shoulder]." T2. 277-78. Officer Murphy received treatment for his injury and was unable to return to duty until July 8, 2006. T2. 278-79, 287, 324-27.

---

[1] Petitioner later stipulated that his driver's license was suspended on March 26, 2004, May 22, 2006, and June 13, 2006, and that his license remained suspended on June 22, 2006. T2. 295, 310, 320.

The officers' version of events was supported by the testimony of Rajesh Sharma, an employee of Delta Airlines who was working as a security guard at the airport on June 22, 2006. T2. 248. Sharma saw an unattended van in front of Terminal 3. T2. 248. Petitioner returned to the van and told Sharma that he was waiting for his family to come out of the airport. T2. 249. After several minutes, Sharma told petitioner he had to move the van. T2. 250. Petitioner moved the van and pulled back around, and while waiting for another vehicle to move, was blocking traffic. T2. 250. Sharma saw the exchange between petitioner and Officer Eddings and testified that petitioner "started struggling with the officer because the officer had one cuff on one hand, but when he was trying to put the other cuff on the other hand, the defendant wouldn't let him do. He was just throwing his arm making a big scene." T2. 251. Sharma observed petitioner continue to resist when another officer responded. T2. 255.

Petitioner did not testify at trial and did not call any witnesses.

        2.     Post-Conviction Procedural History

Petitioner filed a pro se motion seeking to vacate his second conviction pursuant to section 440.10 and to set aside his sentence pursuant to CPL § 40.20 on the grounds that, inter alia, his conviction was obtained by: (1) an unlawful arrest; (2) prosecutorial and judicial misconduct; (3) ineffective assistance of counsel; and (4) perjury. Resp. Aff. Ex. P. On July 27, 2007, the trial court denied petitioner's motion, holding that petitioner's claims were either capable of review on direct appeal and thus barred from section 440.10 review or unsupported by evidence. Resp. Aff. Ex. R. Petitioner's application for leave to appeal the denial of his motion was denied by the Appellate Division on September 16, 2009. Resp. Aff. Ex. T. Petitioner again sought leave to appeal the orders dated June 5, 2007 and July 27, 2007, Resp. Aff. Ex. U, which was denied on December 2, 2009. Resp. Aff. Ex. V.

Petitioner appealed from his second conviction to the Appellate Division, arguing that he "was deprived of his due process right to a fair trial when, in her summation argument, the prosecutor urged the jury to convict [petitioner] because he was prone to criminality," by stating that petitioner "feels he is above the law, he feels he can do whatever he wants whenever he wants." Resp. Aff. Ex. X. The Appellate Division affirmed petitioner's second conviction, holding that petitioner's claim was unpreserved for appellate review and, "[i]n any event, the prosecutor's remarks were either fair comment on the evidence, responsive to the defense counsel's summation, or not so egregious as to have deprived the defendant of a fair trial." Resp. Aff. Ex. Y. Petitioner's application for leave to appeal his second conviction to the New York Court of Appeals was denied. Resp. Aff. Ex. BB. Petitioner's motions to relieve counsel assigned to prosecute the appeals from the first and second convictions and to proceed pro se were denied on October 30, 2009. Resp. Aff. Exs. II, JJ.

  C.  Petition

  On July 19, 2009, petitioner filed a pro se petition for habeas corpus in the United States District Court for the Northern District of New York. The claims relating to the validity of the judgments of conviction rendered in Queens County were severed from the rest of the petition and transferred to this Court. O'Diah v. Corcoran, No. 09-CV-3580 (E.D.N.Y. Aug. 4, 2009). The Court dismissed the petition on August 20, 2009 due to petitioner's failure to comply with a prior order of the Court requiring petitioner to obtain the leave of the Court before filing lawsuits "based upon the same facts and issue dating from November 6, 2002 to November 13, 2007." The Second Circuit vacated the Court's order on the ground that petitioner was seeking habeas relief, rather than asserting claims under 42 U.S.C. § 1983.

Petitioner subsequently filed a second pro se petition in the United States District Court for the Western District of New York. The petition was transferred to the Eastern District of New York on March 28, 2011 and was reassigned from Judge Dora L. Irizarry to the Court on June 6, 2011. O'Diah v. Cuomo, No. 11-CV-1793 (E.D.N.Y. Mar. 22, 2011). The Court consolidated the two (2) petitions to proceed under Docket 09-CV-3580. The Court then directed petitioner to file an amended petition which clearly states which indictment his claims relate to and what applications for post-conviction relief were made. [Docket Entry No. 16]. Petitioner then filed two (2) separate amended petitions, one (1) purporting to address the first conviction, [Docket Entry No. 18] (the "first petition"), and one (1) purporting to address the second conviction, [Docket Entry No. 19] (the "second petition").

The first petition is construed as asserting that: (1) officers arrested petitioner without probable cause; (2) Officer Juez gave false testimony to the grand jury; (3) the evidence presented at trial was legally insufficient to support petitioner's conviction; (4) Officer Juez and Magee gave false testimony at trial, and the prosecution suborned perjury; (5) fraudulent medical records were offered as evidence at trial; (6) petitioner's privilege against self-incrimination was violated by his placement in the courtroom during his trial; (7) the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose to petitioner prior to trial the identities of the officers present at his arrest; (8) petitioner's resentencing for the first conviction violated the Double Jeopardy Clause of the Fifth Amendment; (8) the trial court improperly considered petitioner's prior arrests in sentencing petitioner; and (9) petitioner was deprived of effective assistance of counsel at trial and on appeal of his conviction.

The second petition is construed as asserting that: (1) petitioner was denied the right to testify and to call witnesses before the grand jury; (2) the evidence presented to the grand jury

10

was insufficient to indict petitioner; (3) officers arrested petitioner without probable cause because petitioner's driving privileges had been restored at the time of his arrest; (4) officers violated petitioner's Fourth Amendment rights by searching his vehicle and seizing a letter from the Department of Motor Vehicles; (5) the prosecution violated Brady by failing to disclose the letter to petitioner prior to trial; (6) Officer Murphy gave false testimony at trial; (7) false medical records were introduced into evidence; (8) the evidence presented at trial was legally insufficient to support petitioner's conviction; (9) the trial judge improperly considered petitioner's prior arrests in imposing petitioner's sentence; (10) the prosecution's closing statement was improper; (11) petitioner was denied to the right to substitute appellate counsel and to represent himself pro se; and (12) petitioner was deprived of the effective assistance of trial and appellate counsel.

Aside from the claims listed above, the first and second petitions include a variety of claims that are either entirely unrelated to petitioner's underlying convictions, or are vague, conclusory and frivolous. The Court has determined that these claims fail to state a cognizable claim to habeas relief, and the claims are therefore denied. See, e.g., Anderson v. Griffen, No. 11-CV-6633, 2012 WL 5227297, at *4 (W.D.N.Y. Oct. 22, 2012) ("Petitioner's claim is too vague and conclusory to state a colorable claim for habeas corpus relief."). Petitioner's claims, as construed above, will be discussed in further detail below.

II.     Standard for Habeas Corpus Review

Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

11

or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)). Claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under AEDPA. See Cone v. Bell, 556 U.S. 449, 472 (2009) (citing 28 U.S.C. § 2254(d)). Where AEDPA's deferential standard of review does apply, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." Bierenbaum v. Graham, 607 F.3d 36, 48 (2d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, see 28 U.S.C. § 2254(a), and "does not lie for errors of state law." Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (internal quotation marks omitted). An unreasonable application of established federal law occurs "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Alternatively, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413.

The Supreme Court has stated that "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). "Section 2254(d) reflects the view that habeas corpus

12

is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (internal quotation marks omitted). A state court's unreasonable application of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." Sellan, 261 F.3d at 315 (quotations and citation omitted); see also Sorto v. Herbert, 497 F.3d 163, 169 (2d Cir. 2007) ("[I]t is well-established in this Circuit that the 'objectively unreasonable' standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.") (internal quotation marks omitted).

III.   Analysis

    A.   Exhaustion and Procedural Default

The Court may not grant a petition for habeas corpus unless "the applicant has exhausted the remedies available in the courts of the [s]tate," or "there is an absence of available [s]tate corrective process." 28 U.S.C. § 2254(b)(1)(A), (B)(i). A petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "[E]xhaustion of state remedies requires that [a] petitioner fairly present federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (internal quotation marks omitted). Although a defendant may "fairly present the substance of a federal constitutional claim to the state court without citing 'book and verse on the federal constitution,'" "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 192 (2d Cir. 1982) (quoting Picard v. Connor, 404 U.S. 270, 278 (1971)); see also Clark v. Bradt, No. 10-

13

CV-0964, 2012 WL 28275, at *4 (W.D.N.Y. Jan. 5, 2012) ("A petitioner may exhaust a habeas claim by directly citing to the Constitution, or by (a) relying on pertinent federal cases employing constitutional analysis; (b) relying on state cases employing constitutional analysis in like fact situations; (c) asserting the claim in terms so particular as to call to mind a specific right protected by the Constitution; or (d) alleging a pattern of facts that is well within the mainstream of constitutional litigation.") (citing Daye, 696 F.2d at 190).

Petitioner has failed to fairly present to the state courts the following claims related to his first conviction, since he either did not include the claims on direct appeal or did not include them in motions to vacate the conviction pursuant to section 440.10 or to modify his sentence pursuant to section 440.20: (1) petitioner was arrested without probable cause; (2) false testimony was presented to the grand jury; (3) the evidence presented at trial was legally insufficient to support petitioner's conviction; (4) the evidence at trial included false testimony and false medical records; (5) petitioner's privilege against self-incrimination was violated; (6) the prosecution failed to disclose the identity of the officers present at his arrest prior to trial; (7) petitioner's resentencing following the violation of his probation violated the Double Jeopardy Clause of the Fifth Amendment; and (8) petitioner was deprived of effective assistance of counsel at trial and on appeal of his conviction.

Likewise, petitioner has failed to fairly present to the state courts the following claims related to his second conviction: (1) petitioner was denied the right to present evidence to the grand jury; (2) the evidence presented to the grand jury was not sufficient to indict petitioner; (3) officers arrested petitioner without probable cause; (4) officers violated petitioner's Fourth Amendment rights by seizing a letter from petitioner's vehicle; (5) the prosecution violated Brady by failing to disclose the letter to petitioner prior to trial; (6) the evidence at trial included

14

false testimony and false medical records; (7) the evidence presented at trial was legally insufficient to support petitioner's conviction; (8) petitioner's claims relating to his sentencing; (9) petitioner was denied the right to substitute appellate counsel and to represent himself pro se; and (10) petitioner was denied effective assistance of counsel at trial and on appeal of his conviction.

"[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). New York law permits a defendant to collaterally attack a judgment of conviction obtained in violation of his constitutional rights, CPL § 440.10(1)(h), but provides that any such motion be denied where, inter alia: (1) the issue "was previously determined on the merits upon an appeal from the judgment"; (2) the judgment is appealable or pending on appeal and "sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal"; or (3) "sufficient facts appear on the record . . . to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, [but] no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." See Lawson v. McGinnis, No. 04-CV-2345, 2013 WL 789173, at *16 (E.D.N.Y. Mar. 1, 2013).

The record of petitioner's first trial would have permitted direct appellate review of the following claims: (1) petitioner was arrested without probable cause; (2) the evidence presented

at trial was legally insufficient to support petitioner's conviction; (3) the evidence at trial included false testimony and false medical records; (4) petitioner's privilege against self-incrimination was violated; (5) the prosecution failed to disclose the identity of the officers present at his arrest prior to trial; and (6) petitioner was deprived of effective assistance of counsel at trial. Likewise, the record of petitioner's second trial would have permitted review of the following claims: (1) officers arrested petitioner without probable cause; (2) officers violated petitioner's Fourth Amendment rights by seizing a letter from petitioner's vehicle; (3) the prosecution violated Brady by failing to disclose the letter prior to trial; (4) petitioner's conviction was obtained by false testimony; (5) the evidence presented at trial was legally insufficient to support petitioner's conviction; and (6) petitioner was denied the effective assistance of trial counsel. Because petitioner cannot raise these claims in a second section 440.10 motion and petitioner has already appealed his conviction, these claims are procedurally defaulted.

"[P]rocedural default in state court will bar federal habeas review unless the petitioner can either: (1) show cause for the default and actual prejudice as a result of the constitutional violation, or (2) demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice, or, in other words, an unjust incarceration.'" Spence, 291 F.3d at 170 (internal quotation marks and citation omitted) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986) ("[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a [writ of habeas] may [be] grant[ed] even in the absence of a showing of cause for the procedural default.")).

"A petitioner establishes cause for a default by demonstrating that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"

Yampierre v. Phillips, No. 05-CV-2249, 2010 WL 744526, at *6 (E.D.N.Y. Mar. 1, 2010)

(internal quotation marks omitted). Petitioner has failed to show cause for his failure to present

his claims in state court. While ineffective assistance of appellate counsel may serve as a cause

for default, "it must rise to the level of a constitutional deficiency and be brought as an

independent claim before the state courts." Id. Because petitioner "never brought a claim of

ineffective assistance of appellate counsel to any New York Court in the requisite coram nobis

proceeding, . . . he has not shown 'cause'" for his failure to comply with state procedural rules.

Furthermore, as discussed in further detail below, petitioner has failed to demonstrate that he was

denied effective assistance of appellate counsel with respect to either of his convictions.

Petitioner has also failed to show that failure to review his claims will result in an unjust

incarceration, as he has not produced evidence of his innocence and the record contains ample

evidence of his guilt. Therefore, petitioner's procedurally defaulted claims are barred from

habeas review by the Court.[2] However, in an abundance of caution, the Court will address the

merits of petitioner's procedurally defaulted claims below. See Edwards v. Rock, No. 09-CV-

1387, 2013 WL 80176, at *1 (E.D.N.Y. Jan. 7, 2013).

 With respect to petitioner's unexhausted claims which are not procedurally defaulted, the

Court may: "(1) stay the proceeding pending complete exhaustion of state remedies; (2) dismiss

the petition, without prejudice, until the claims have been exhausted in state court, unless such

review would be precluded pursuant to the AEDPA's one (1)-year statute of limitations; (3)

afford petitioner an opportunity to withdraw the unexhausted claim(s); or (4) deny the petition on

the merits pursuant to 28 U.S.C. § 2254(b)(2)." Williams v. Ercole, No. 09-CV-0363, 2011 WL

---

[2] Petitioner's ineffective assistance of counsel claims, some of which are unexhausted and procedurally defaulted, are addressed separately below.

4944268, at *5 (E.D.N.Y. Oct. 12, 2011) (citing Gandarilla v. Artuz, 322 F.3d 182, 186 (2d Cir. 2003); Pratt v. Greiner, 306 F.3d 1190, 1996-97 (2d Cir. 2002)). As discussed in further detail below, the Court finds that petitioner's unexhausted claims are plainly without merit, and the claims are denied pursuant to 28 U.S.C. § 2254(b)(2).

B.    Fourth Amendment Claims

In addition to being procedurally defaulted, petitioner's Fourth Amendment claims are barred from habeas review under the doctrine of Stone v. Powell, 428 U.S. 465 (1976), as petitioner was afforded a full and fair opportunity to raise his Fourth Amendment claims in state court. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494-95; Young v. Conway, 698 F.3d 69, 85 (2d Cir. 2012) ("Because 'in the case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration,' habeas relief is unavailable unless the defendant was denied an opportunity for full and fair litigation in state court."). Therefore, habeas review of Fourth Amendment claims remains available only where "the state provides no corrective procedures at all to redress Fourth Amendment violations" or "the state provides the [corrective] process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977).

"[T]he 'federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in [CPL § 710.10], as being facially adequate." Capellan v. Riley, 975 F.2d 67, 70 n.1 (2d Cir. 1992); see also, e.g., Cotto v. Fisher, No. 09-CV-9813, 2012 WL

18

5500575, at *20 (S.D.N.Y. Aug. 23, 2012) ("The Second Circuit has long held that Article 710 of the New York Criminal Procedure Law provides a facially adequate mechanism for adjudicating Fourth Amendment claims in criminal proceedings."); Daily v. New York, 388 F. Supp.2d 238, 249 (S.D.N.Y. 2005) ("The State of New York clearly has provided defendants . . . with the necessary corrective procedure through Section 710 of the New York Criminal Procedure Law."); Singh v. Miller, 104 F. App'x 770, 772 (2d Cir. 2004) ("[Petitioner] does not and cannot contend that New York does not provide corrective procedures for violations of Fourth Amendment rights."). Therefore, petitioner must demonstrate that an unconscionable breakdown in the process afforded by New York law prevented the litigation of his Fourth Amendment claims.

Petitioner has failed to show that he was deprived of the opportunity to utilize the corrective process afforded by New York law. Therefore, Stone v. Powell bars habeas review of petitioner's Fourth Amendment claims by the Court, including his claims that (1) he was arrested without probable cause on November 6, 2002 and June 22, 2006, and (2) officers unlawfully searched his vehicle and seized a letter from the Department of Motor Vehicles. The Court also notes that the record of petitioner's first and second trials supports the existence of probable cause for petitioner's arrest on both occasions. Moreover, there is no basis for petitioner's contention that the letter from the Department of Motor Vehicles should have been excluded, as the trial record shows that the letter was disclosed to petitioner's counsel prior to trial, the letter in petitioner's possession was not seized, and a witness from the Department of Motor Vehicles was used to introduce a copy of the letter at trial.

C.    Grand Jury Claims

In addition to being procedurally defaulted, petitioner's claims related to the grand jury proceedings leading to the first and second indictments are not cognizable for habeas review.

19

"[N]ew York's constitution creates a right to indictment by a grand jury for felony charges, [and] state law governs how these proceedings are to be conducted and creates the remedies for any procedural violations." Nelson v. New York, No. 10-CV-9021, 2013 WL 796276, at *2 (S.D.N.Y. Mar. 5, 2013). "A state criminal defendant has no federal right to have felony charges against him presented to a grand jury . . . ." Id. Therefore, "claims of deficiencies in . . . state grand jury proceedings are [not] cognizable in a habeas corpus proceeding." Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); see also Nelson, 2013 WL 796276, at *2 ("[B]ecause New York State law, and not federal law, prescribes how state grand jury proceedings are to be conducted, any claimed irregularity in state grand jury proceedings is necessarily a state law claim and cannot be a basis for habeas corpus relief."). Therefore, petitioner's claims relating to alleged improprieties in the grand jury proceedings leading to the first and second indictments are not cognizable in a habeas proceeding. See, e.g., Louis v. Fischer, No. 04-CV-2887, 2007 WL 4198255, at *22-23 (E.D.N.Y. June 5, 2007) (holding that the petitioner's claim that a witness perjured herself in a grand jury proceeding is not cognizable on federal habeas review).

D.      Insufficiency of the Evidence

Even if not procedurally barred, petitioner's sufficiency of the evidence claims are without merit. In order to demonstrate that the evidence presented at the trials was legally insufficient to support his convictions, petitioner must show that "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" Flowers v. Fisher, 296 F. App'x 208, 210 (2d Cir. 2008) (internal quotation marks omitted); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979).[3] "A federal habeas petitioner 'bears a very heavy burden' when challenging the legal

---

[3]      A district court considering a claim of insufficient evidence on habeas review does not make a de novo determination of whether the evidence supported the conviction, but rather

sufficiency of a state criminal conviction." Copeland v. Walker, 258 F. Supp.2d 105, 118

(E.D.N.Y. 2003). The evidence at petitioner's trials was sufficient to support a reasonable finder

of fact in finding that petitioner was guilty of the crimes for which he was convicted.[4]

The evidence against petitioner at his first trial, including the testimony of the two (2)

arresting officers and a third-party eye witness, and the injured officer's medical records, was

sufficient to support petitioner's conviction of assault in the second degree and resisting arrest.

The testimony at trial showed that the officers had probable cause to arrest petitioner and that

petitioner attempted to escape from the officers, injuring one (1) of the officers in the process.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could

have found petitioner guilty of assault in the second degree and resisting arrest.

At petitioner's second trial, the evidence against him included the testimony of two (2)

officers, a third-party eye witness, and an employee of the Department of Motor Vehicles who

testified regarding the status of petitioner's driver's license at the time of his arrest, and the

---

analyzes "whether the state court provided fair process and engaged in reasoned, good-faith decision-making when applying Jackson's 'no rational trier of fact' test." Copeland v. Walker, 258 F. Supp.2d 105, 118 (E.D.N.Y. 2003) (internal quotation marks omitted). However, because petitioner's claims are plainly without merit, they are denied pursuant to 28 U.S.C. § 2254(b)(2).

[4]     "A person is guilty of assault in the second degree when: . . . With intent to prevent . . . a police officer . . . from performing a lawful duty, . . . he or she causes physical injury to such . . . police officer." N.Y. Penal Law §120.05. "A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer . . . from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30. To establish that petitioner was guilty of aggravated unlicensed motor vehicle operation in the third degree, the prosecution was required to show that petitioner drove a motor vehicle on a public highway while knowing or having reason to know that his license or privilege for operating such motor vehicle in New York had been suspended. VTL § 511(1)(a). To establish that petitioner was guilty of unlawful operation of a motor vehicle on a public highway, the prosecution was required to show that petitioner "operate[d] . . . a motor vehicle" without being "duly licensed pursuant" to New York law. VTL § 509(1). To establish that petitioner was guilty of stopping, standing, or parking outside of a business or residential district, the prosecution was required to show that petitioner unlawfully stopped and parked his vehicle upon a highway, blocking several lanes of traffic outside of a business. VTL § 1201.

injured officer's medical records. This testimony showed that the officers had probable cause to arrest petitioner, petitioner struggled with the officers, causing a serious injury to Officer Murphy, petitioner was operating a motor vehicle with a suspended license, and petitioner parked his vehicle across multiple lanes of traffic. Again viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found petitioner guilty of assault in the second degree, resisting arrest, aggravated unlicensed motor vehicle operation in the third degree, unlawful operation of a motor vehicle on a public highway, and stopping, standing, or parking outside of a business or residential district.

Therefore, the record of petitioner's trials does not support a finding that no rational trier of fact could have found petitioner guilty beyond a reasonable doubt. Accordingly, petitioner's claim that there was insufficient evidence to support his first and second convictions is denied.

E.      Fifth Amendment Violation

Petitioner claims that his privilege against self-incrimination was violated by his being forced to be present in the courtroom during his first trial, which allowed the testifying witnesses to identify him. In addition to being procedurally barred, this claim is not cognizable on habeas review, as "a defendant has no constitutional right to absent himself from trial." De La Rosa v. Perlman, No. 02-CV-4810, 2003 WL 21556961, at *3-4 (S.D.N.Y. July 10, 2003) (citing Lurie v. Wittner, 228 F.3d 113, 133 (2d Cir. 2000)); see also United States v. Fitzpatrick, 437 F.2d 19, 27 (2d Cir. 1970).

F.      Perjured Testimony

Petitioner claims that several witnesses committed perjury during petitioner's trials and that the prosecution suborned the false testimony. With respect to his first trial, petitioner alleges that: (1) Officer Juez testified at trial that petitioner assaulted him even though Officer Juez was

22

not present at petitioner's arrest; (2) Magee falsely testified that he interacted with petitioner prior to the arrest; (3) false medical reports were introduced at trial; and (4) the prosecutor suborned perjury by directing Officer Juez and Magee to testify falsely. With respect to his second trial, petitioner alleges that: (1) Officer Murphy gave false testimony that petitioner assaulted him; (2) the prosecution introduced false medical reports related to Officer Murphy's injury; and (3) the prosecution suborned Officer Murphy's perjury because the prosecution was aware of witnesses that would have testified that Officer Murphy was not present at the scene of petitioner's arrest.

"A conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." Napue v. Illinois, 360 U.S. 264, 269 (1959). Therefore, a conviction must be set aside where "the prosecution knew, or should have known, of the perjury" and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976); see also Johnson v. United States, 307 F. Supp.2d 380, 389 (D. Conn. 2003) ("In order to overturn a conviction based on perjured testimony of a witness, the petitioner must show that the witness actually committed perjury, that the evidence was not previously discoverable with due diligence, and that the new evidence is material."). Petitioner has failed to offer any evidence in support of his allegation that the witnesses at his trials testified falsely or that the medical records introduced into evidence were fraudulent. Petitioner has also failed to offer evidence in support of his contention that the prosecution suborned perjury. Therefore, petitioner has failed to state a claim for habeas relief, and his claims related to perjured testimony and false medical records are denied. See, e.g., Lombard v. Mazzuca, No. 00-CV-74622, 2003 WL 22900918, at *7-8 (E.D.N.Y. Dec. 8, 2003) ("[Petitioner] offers no evidence to show that any of the testimony he cites was false or material, or that the prosecutor knew or should have known of

23

its alleged falsity. . . . In the absence of any evidence demonstrating that the prosecutor knowingly used, or should have known that she was using, material, perjured testimony, these claims cannot support issuance of the writ.").

      G.    <u>Brady</u> Claims

Petitioner alleges that the prosecution failed to disclose prior to his first trial the identity of six (6) officers that petitioner alleges were present at his arrest. The Supreme Court's decision in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), "requires that the government disclose material evidence favorable to a criminal defendant." <u>United States v. Mahaffy</u>, 693 F.3d 113, 127 (2d Cir. 2012). "[T]he government's failure to disclose favorable information will result in an order of retrial if the undisclosed information is 'material,' within the exacting standard of materiality established by the governing case law." <u>United States v. Spinelli</u>, 551 F.3d 159, 164 (2d Cir. 2008). "Evidence is favorable if it is either exculpatory or impeaching, and it is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Mahaffy</u>, 693 F.3d at 127 (quoting <u>Youngblood v. West Virginia</u>, 547 U.S. 867, 870 (2006)) (citation omitted). "'[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal,' but rather, a conviction must be reversed 'upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" <u>Id.</u> at 127 (quoting <u>Youngblood</u>, 547 U.S. at 867).

There is no basis for the Court to conclude that the identity of the officers was material, that their testimony would have provided exculpatory evidence, or that the prosecution committed a <u>Brady</u> violation by failing to disclose the information prior to petitioner's trial.

Moreover, given the overwhelming evidence against petitioner presented at trial, petitioner has failed to demonstrate that he was prejudiced by the prosecution's failure to disclose this information.

Petitioner also alleges that the prosecution was obligated to disclose the letter from the Department of Motor Vehicles prior to trial. The trial record indicates that the letter was in fact disclosed to petitioner's counsel prior to trial and that it was moved into evidence without objection. T2. 206. Moreover, even if the letter was not disclosed prior to petitioner's trial, petitioner has not demonstrated that he was prejudiced by the delay.[5]

Accordingly, petitioner's claim for habeas relief on the basis of the prosecution's alleged Brady violations is denied.

H.     Sentencing Claims

Petitioner's claims related to his sentencing are unexhausted. New York law provides that "[a]t any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was unauthorized, illegally imposed, or otherwise invalid as a matter of law." CPL § 440.20. Petitioner has not filed a motion pursuant to CPL § 440.20 and thus has not exhausted his sentencing claims in state court. However, because the claims relating to petitioner's sentences are plainly without merit, they are denied pursuant to 28 U.S.C. § 2254(b)(2). See, e.g., Boddie v. N.Y. State Div. of Parole, 288 F. supp.2d 431, 439 (S.D.N.Y. 2003) ("[I]n habeas corpus cases, 'potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit.'").

---

[5]     Petitioner also appears to allege that the prosecution committed a Brady violation by failing to disclose evidence of petitioner's disability. This claim is vague and frivolous, therefore is denied.

1.   Double Jeopardy

Petitioner's claim that his resentencing for the first conviction following the violation of
the terms of his parole violated the Double Jeopardy Clause of the Fifth Amendment is without
merit: "[T]here is no double jeopardy protection against revocation of probation and the
imposition of imprisonment." United States v. DiFrancesco, 449 U.S. 117, 137 (1980).

2.   Comments by Sentencing Judge

It appears that petitioner may also be referring to the trial court's statement that petitioner
"had a history of being at the airport, of violating the traffic rules. These things aren't made up."
Sentencing Transcript, People v. Odiah, Ind. No. 3719-02, 1806-09 (N.Y. Sup. Ct. Mar. 19, 2007)
at 23. The sentencing transcript reveals that the trial judge was responding to petitioner's
statement that he was unjustly targeted by the police and was attempting to explain to petitioner
why his behavior attracted the attention of the officers. Therefore, petitioner has failed to show
that the trial court considered any improper factors in imposing petitioner's sentence.

To the extent petitioner is alleging that his sentence constituted cruel and unusual
punishment under the Eighth Amendment, the claim is denied, as "a claim of excessive
punishment does not present a constitutional question necessary for habeas reversal" where the
sentence is within the sentencing range prescribed by state law. Izaguirre v. Lee, 856 F. Supp.2d
551, 571 (E.D.N.Y. 2012). Moreover, to the extent that petitioner relies on state law as a basis
for his sentencing claims, such claims are not cognizable on habeas review. See id.; Wilson v.
Ercole, No. 06-CV-533, 2009 WL 792089, at *11 (E.D.N.Y. Mar. 23, 2009).

I.   Prosecutorial Misconduct

Petitioner alleges that the prosecutor made improper statements during her summation at
petitioner's second trial, including that: (1) petitioner kicked Officer Murphy; (2) petitioner's car

26

was blocking two (2) lanes of traffic; and (3) petitioner's driver's license was suspended on March 26, 2004, May 22, 2006, and June 13, 2006. These claims are procedurally defaulted and without merit.

The prosecutor's comments were supported by testimony at trial: (1) Officer Eddings testified that petitioner's van "obstruct[ed] the two lanes of flowing traffic," T2. 197; (2) petitioner stipulated that records provided by the Department of Motor Vehicles reflected that his license was suspended as of June 22, 2006, T2. 320; and (3) Sharma testified that he saw petitioner kick Officer Murphy, T2. 399. Insofar as Officer Murphy's testimony did not specifically attribute his injury to a kick from petitioner, the distinction is irrelevant, as the issue for the jury's consideration was whether Officer Murphy was injured while conducting a lawful arrest, which was clear from his testimony.

Moreover, even if the prosecution's statements were improper, petitioner is "'not entitled to habeas relief based on trial error unless [he] can establish that it resulted in actual prejudice.'" Bentley v. Scully, 41 F.3d 818, 824 (2d Cir.1994) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)) (emphasis omitted); see also Gonzalez v. Sullivan. 934 F.2d 419, 424 (2d Cir.1991) ("A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding.") (quoting United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). To determine whether this standard has been met, the Court may consider, inter alia: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." Bentley, 41 F.3d at 824. "It is a rare case in which improper comments in a prosecutor's summation are so

prejudicial that a new trial is required." United States v. Rodriguez, 968 F.2d 130, 142 (2d Cir. 1992).

In any event, petitioner has not demonstrated actual prejudice, since the evidence against him was overwhelming, and the Court cannot reasonably conclude that the comments were material to the jury's finding of guilt. Furthermore, insofar as petitioner is again raising the argument made on appeal that the prosecution improperly stated that petitioner "feels he is above the law, he feels he can do whatever he wants whenever he wants," Resp. Aff. Ex. X, petitioner has failed to demonstrate that it was objectively unreasonable for the Appellate Division's to conclude that the statements "were either fair comment on the evidence, responsive to the defense counsel's summation, or not so egregious as to have deprived the defendant of a fair trial." Resp. Aff. Ex. Y.

Therefore, petitioner's claim to habeas relief on the basis of alleged prosecutorial misconduct is denied.

J.      Denial of Right to Substitute Appellate Counsel

Petitioner filed motions for the assignment of new appellate counsel with respect to the appeals of both his convictions, which were denied by the Appellate Division, Exs. II, JJ. Petitioner alleges that he was wrongfully denied the right to substitute appellate counsel or to submit a supplemental pro se brief on appeal. "'The [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.'" Jackson v. Poole, No. 06-CV-00188, 2011 WL 4901314, at *17 (S.D.N.Y. July 19, 2011) (quoting Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989)). "[A]ppellate counsel is not required to obtain a client's consent regarding which claims

28

to assert on direct appeal," id., and "a defendant seeking new assigned counsel must demonstrate good cause for the requested substitution," People v. Manley, 894 N.Y.S.2d 575, 576 (App. Div. 2010).

Petitioner has failed to offer any basis for the Court to question the Appellate Division's determination that a substitution of counsel was not warranted, and as discussed in further detail below, petitioner has not shown that his appellate counsel was ineffective. Therefore, petitioner's claim to habeas relief on the ground that he was denied the opportunity to substitute appellate counsel is denied.

K.      Ineffective Assistance of Counsel

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, petitioner must prove that (1) "counsel's performance was deficient, so deficient that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, and (2) he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984) (internal citations and quotation marks omitted)). The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. Moreover, because the AEDPA requires federal courts to give state courts "deference and latitude" when considering an ineffective assistance of counsel claim on habeas review, Harrington, 131 S.Ct. at 786, a petitioner must demonstrate that it was "necessarily unreasonable" for the state court to conclude that the petitioner had not overcome

29

the presumption of competence and that he had failed to undermine confidence in the jury's

verdict, Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011).

        1.     First Conviction

The following attorneys represented petitioner during the proceedings related to his first

conviction: (1) Frank Galchus, who represented petitioner before the grand jury; (2) Stephen

Bilkis, who represented petitioner prior to trial; (3) Steven Zalewski, who represented petitioner

at trial; (4) Denise A. Corsi, who represented petitioner on direct appeal; (5) Robert E. Sokolski

and Meir Moza, who represented petitioner at his sentencing; and (6) Leonard Ressler, who

represented petitioner at this section 440.10 hearing. Petitioner alleges that: (1) Zalewski was

ineffective because he (a) failed to conduct an investigation that would have established that

petitioner was arrested by six (6) white police officers, and (b) failed to move for a mistrial after

the trial judge allegedly found that the prosecutor encouraged Officer Juez and Magee to give

false testimony; (2) Galchus was ineffective because he failed to object to Officer Juez's grand

jury testimony; and (3) Moza and Sokolski were ineffective because they failed to file a motion

pursuant to CPL § 330.30 as directed by the trial judge.

Petitioner failed to raise ineffective assistance claims against Bilkis, Sokolski, Moza or

Ressler in state court. Because these claims could have been presented on direct appeal or in a

previous section 440.10 motion, they are procedurally defaulted and barred from habeas review.

        a.     Pre-trial Counsel

Petitioner provides no basis for his allegation that Galchus was ineffective due to his

failure to raise an objection to Officer Juez's testimony before the grand jury. Moreover, the

issue is irrelevant in light of petitioner's subsequent conviction. See Shapard v. Graham, No. 10-

CV-6700, 2012 WL 414117, at *2 (W.D.N.Y. Feb. 8, 2012) ("A jury conviction transforms any

30

defect connected with the grand jury's charging decision into harmless error, because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt."). Therefore, petitioner's ineffective assistance claim on this basis is denied.

b.      Trial Counsel

Petitioner's ineffective assistance claim against Zalewski on the basis of his failure to conduct an adequate pre-trial investigation into the circumstances of petitioner's arrest was denied by the trial court, after a hearing, on the ground that petitioner failed to demonstrate that a subpoena of PAPD records would have supported petitioner's claim that the officers who testified at his trial were not present during his arrest. Ex. H. Petitioner has again failed to offer any evidence in support of his assertion that a subpoena of the other six (6) officers allegedly at the scene of petitioner's arrest would have revealed that Officer Juez was not present at his arrest and gave false testimony at petitioner's trial. Moreover, petitioner has failed to show that it was "necessarily unreasonable" for the trial court to conclude that petitioner had not overcome the presumption of competence with respect to Zalewski's pre-trial investigation.

Petitioner's claim that Zalewski's failure to move for a mistrial constituted ineffective assistance appears to rely upon the trial judge's warning to the prosecution not to lead the witness. The prosecution asked Magee which airport he flew into on November 6, 2002, and he answered, "I think it was JFK, but I don't remember now because I fly so much. I don't remember exactly which airport I flew into that day." T. 119. The prosecution then asked, "Could it have been LaGuardia?" T. 119. The trial judge sustained an objection, excused the witness, and said, "If it were before a jury I'd have to consider an application for a mistrial. That is not to be done in this courtroom at any time under any circumstances." T. 120. Petitioner's counsel argued that Magee's entire testimony was "tainted," and the trial judge stated that he

31

would "give th[e] testimony its appropriate weight based upon everything." T. 120. It is clear from the record that a motion for a mistrial would have been denied, and Zalewski's failure to make a futile motion does not constitute ineffective assistance. See, e.g., United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) ("[C]ounsel could not . . . have been ineffective for failing to make a motion that would have been futile.").

Petitioner has otherwise failed to show that Zalewski's performance was deficient. Therefore, petitioner's claim that he received ineffective assistance of counsel at his first trial is denied.

c.      Appellate Counsel

Petitioner's claim that his appellate counsel was ineffective is unexhausted. See Carr v. Berbary, No. 06-CV-2724, 2013 WL 635215, at *7 (E.D.N.Y. Feb. 20, 2013) ("Petitioner's claim challenging the effectiveness of his appellate counsel . . . may not be deemed exhausted . . . [because] [p]etitioner never raised his ineffective assistance of appellate counsel claim before the state courts, but he is still able to exhaust the claim through a petition for a state writ of error coram nobis.") (citing People v. Bachert, 69 N.Y.2d 593 (1987). However, because the claim is plainly without merit, it is denied pursuant to 28 U.S.C. § 2254(b)(2).

Petitioner asserts that Corsi was ineffective due to her opposition to petitioner's attempt to file a pro se brief on appeal and her failure to assert a claim of ineffective assistance of trial counsel.   In fact, Corsi took no position with respect to petitioner's attempt to replace her as appellate counsel and to file a pro se brief. See Exs. FF, GG. Furthermore, petitioner has not demonstrated that Corsi's decision not to assert a claim of ineffective assistance of trial counsel was deficient or outside the wide range of professionally competent assistance, as petitioner has not demonstrated that he possessed a meritorious claim of ineffective assistance of trial counsel.

32

2.    Second Conviction

a.    Trial Counsel

Petitioner alleges that his counsel was ineffective because he: (1) failed to object to the introduction into evidence of the letter from the Department of Motor Vehicles; (2) told the jury that petitioner was "a major pain to the legal and judicial communities in the City of New York; (3) told the jury to convict petitioner; (4) was aware that Officer Murphy gave false testimony but failed to object; (5) signed a false and inaccurate stipulation; (6) denied petitioner's request to testify and present witnesses before the grand jury; (7) denied petitioner's request to testify and present witnesses at trial; (8) did not conduct an investigation; and (9) opposed petitioner's motions to relieve counsel. These claims are procedurally defaulted, as the basis for the claims was established in the trial record and petitioner failed to raise the claims on direct appeal. Moreover, the claims are without merit.

According to an affidavit submitted by petitioner's counsel, counsel "conducted a complete investigation into [petitioner's] arrest, including into the presence of a video camera at the scene," and "[a]fter [the] investigation, [counsel] discussed the findings with [petitioner] . . . ." Petitioner has failed to demonstrate that this investigation was deficient.    Counsel stated that he consulted with petitioner throughout the trial, and "the decision to testify or, for that matter, call witnesses to testify on his behalf, was ultimately [petitioner's] decision." Resp. Aff. Ex. Q. "After a discussion [with petitioner]," petitioner "concluded that it was best to rest without calling [petitioner] or his son to testify." Id. There is no basis for the Court to doubt the truthfulness of counsel's statement or to conclude that petitioner's testimony would have altered the outcome at trial.

According to petitioner's counsel, petitioner also "agreed to [counsel's] stipulations relating to the lesser counts charged and acknowledged that, on the day of his arrest, his license was not valid." Id. There is no basis for the Court to question "counsel's decision to stipulate to certain evidence," since such a decision "involves a strategic choice . . . [and] is virtually unchallengeable if made after thorough investigation." United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) (internal quotation marks omitted). Given that petitioner's license was in fact suspended, it was not unreasonable for counsel to stipulate to this fact and focus on challenging the charges of assault and resisting arrest. Furthermore, because the suspension of petitioner's license was not at issue, there was no reason for counsel to object to the admission of the letter from the Department of Motor Vehicles indicating as much.

Petitioner's claim that his counsel failed to object to Officer Murphy's "false" testimony is likewise without merit, since the record shows that counsel aggressively cross-examined Officer Murphy and attempted to weaken his testimony. Lastly, there is no support in the record for petitioner's contention that his counsel stated to the jury that petitioner was a "major pain to the legal and judicial communities in the City of New York" or that his counsel opposed a motion to replace him as counsel. The remainder of petitioner's claims with respect to his trial counsel are vague and frivolous. Accordingly, petitioner's claim to habeas relief upon the basis of alleged ineffective assistance of counsel at his second trial is denied.

b.      Appellate Counsel

To the extent petitioner claims that his appellate counsel was ineffective with respect to the appeal of petitioner's second conviction, this claim is denied for the same reasons as the ineffective assistance of appellate counsel claim asserted with respect to the appeal of petitioner's first conviction.

34

L.     Remaining Claims

As noted above, in addition to the claims specifically addressed herein, petitioner has asserted a variety of other claims, some that appear to relate to the convictions at issue here, and some that appear to relate to separate criminal and civil matters. To the extent the claims are not related to the first and second convictions, they are not cognizable on habeas review. To the extent the claims are related to petitioner's convictions, the Court finds these claims to be conclusory, vague and frivolous, and thus insufficient to state a claim for habeas relief. <u>Robles v. Lempke</u>, No. 09-CV-2636, 2011 WL 9381499, at \*26 (E.D.N.Y. Sept. 9, 2011) ("A habeas petition may be denied where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous.") (internal quotation marks omitted).

Therefore, petitioner's remaining claims not specifically addressed herein are denied.

IV.     Conclusion

For the foregoing reasons, the Petition is denied. As petitioner has failed to make a substantial showing of a violation of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(1). In accordance with Federal Rule of Civil Procedure 77, the Clerk of Court shall serve a copy of this order upon all parties, including petitioner at his last known address.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 29, 2013
Central Islip, New York